314

GEORGE GREENBERG, as Administrator of the Estate of RONALD GREENBERG, Deceased, et al., Plaintiffs, v. CITY OF YONKERS, Defendant; AMERICAN CYANAMID ,Co., INC., Appellant, and FEDERATION OF JEWISH PHILANTHROPIES, INC., et al., Respondents and Third-Party Plaintiffs. ELI RABINEAU, Third-Party Defendant. (Action No. 1.) (And Four Other Actions.)

Second Department, July 8, 1974.

*King, Edwards & O'Connor* (*Benjamin H. Siff* and *Thomas R. Newman* of counsel), for appellant.

*Clark, Gagliardi & Miller* (*Henry G. Miller* and *Morris Zweibel* of counsel), for Federation of Jewish Philanthropies, Inc. and another, respondents.

*McCarthy, Fingar, Donovan & Glatthaar* (*Daniel G. Donovan* of counsel), for Eli Rabineau, respondent in Action No. 4.

SHAPIRO, J. In five consolidated wrongful death and personal injury actions, defendant American Cyanamid Co., Inc. (hereafter "Cyanamid") appeals from the portions of an amended judgment which are in favor of defendants Federation of Jewish Philanthropies of Yonkers, Inc. and Yonkers Jewish Community Center (hereafter collectively called "Center") for $597,975 against Cyanamid. We affirm the said portions of the judgment.

### THE FACTS

On December 20, 1965, a fire of incendiary origin in the building of Center caused the deaths of nine children and two women

and injured several other persons who were trapped on the fourth floor of the Center's renovated building. In accordance with architectural plans drawn by defendant Rabineau, plastic panels made of Acrylite, Cyanamid's product, had been installed as decorative screening around the building's third floor balcony, which overlooked the second floor auditorium. The fire ignited the Acrylite panels and, in the conflagration, the deaths and injuries were caused.

## THE TRIALS

The various issues raised by the pleadings resulted in a trifurcated trial. The first segment of the trial was on the issue of liability with respect to defendants Center, Cyanamid and Rabineau. The actions against the other named defendants were ultimately dismissed by the trial court, as were the cross claims and third-party complaints, except for those interposed in the answers served on behalf of defendants Center and Rabineau against Cyanamid. In that first portion of the trial, the Trial Justice granted Cyanamid's motion to dismiss the *negligence* causes of action asserted against it by the plaintiffs, for failure of proof, but he denied Cyanamid's motion to dismiss with respect to the cause of action alleging breach of warranty. Thereafter he explained his reasons for the dismissal, saying, '' There was never submitted to this jury any issue of fact respecting the negligence of American Cyanamid '' and '' I dismissed the negligence because it was not litigated.''

The first phase of the trial resulted in a verdict in favor of the plaintiffs against defendants Center and Rabineau and in favor of Cyanamid against the plaintiffs. The question of apportionment of liability between the defendants was not submitted to the jury at this phase of the trial.

The respective plaintiffs then, on the record, settled their claims against defendants Center and Rabineau and their respective carriers for a total sum of $915,500. This sum was made up of the net proceeds of the Rabineau insurance policy in the sum of $207,500 plus a further payment by Rabineau, individually, of $8,000, and $700,000 paid on behalf of Center. The settlement stipulation provided that it was entered into without prejudice on the part of the settling defendants to proceed on their cross claims against defendant Cyanamid; and Rabineau's right of indemnity against Cyanamid was transferred to Center.

The trial court then submitted to the *same* jury the second phase of the case, to wit, the apportionment of responsibility

between defendants Center and Rabineau, as well as the cross claims interposed by these defendants against defendant Cyanamid. The jury, under a *Dole* v. *Dow Chem. Co,* charge (30 N Y 2d 143), apportioned the responsibility of Center and Rabineau, finding Center liable for 30% and Rabineau for 70%.

The proof on the second phase included evidence which the plaintiffs had offered in rebuttal in the first phase of the case but which had then been refused admission by the trial court. The jury, having this further evidence bearing on the issue of Cyanamid's negligence, rendered a verdict finding it to have been negligent.

On the cross claims of defendants Center and Rabineau against Cyanamid, the jury's verdict apportioned the responsibility in the following ratios: on Center's obligation, Cyanamid was held liable for 60%, and on Rabineau's portion, for 70%.

Since Cyanamid refused to concede the reasonableness of the settlements entered into between the plaintiffs and defendants Center and Rabineau, that issue was submitted to the jury in the third phase of the trial. The jury found that all of the settlements were reasonable, except the following: that Mrs. McKinley's case was reasonably worth the sum of $12,000 instead of the $22,500 for which it had been settled; that Mr. McKinley's case was reasonably worth the sum of $12,000 instead of the $20,000 for which it had been settled; and that Miss Metcalf's case was reasonably worth $500 instead of the $5,000 for which it had been settled.

Since as part of the settlement it was agreed between the settling defendants that any right of indemnity "which may be had on behalf of Rabineau, shall be transferred and is hereby transferred to the carrier for the defendants Center and Federation", judgment was entered in favor of Center and against Cyanamid in the total sum of $597,975 in accordance with the proportions found by the jury.

### THE ISSUES ON THIS APPEAL

Cyanamid raises no factual issue concerning the jury's second stage verdict that its negligence was a proximate cause of the plaintiffs' damages.* Instead, Cyanamid treats the first stage verdict as a prophylactic against the liability to which, over its protest, it was exposed in the trial's second stage.

* Evidence in the trial's second stage showed that, despite Cyanamid's knowledge of the hazardous flammability rate and heavy smoke density factor of Acrylite, Cyanamid advertised Acrylite as a material having a "slow burn rate", usable in the interiors of buildings, and "safe for children".

Accordingly, Cyanamid argues that, because it was exonerated of liability by the jury in the trial's first stage, it was error to compel it to participate in the second stage of the trial. Apportionment of liability under *Dole* v. *Dow Chem. Co.* (30 N Y 2d 143, *supra*), argues Cyanamid, may be determined only after a party has been found to have been a joint tort-feasor.

Cyanamid's argument has a superficial allure if the trial's second stage is regarded solely as an apportionment proceeding. In fact, however, the second stage was also a trial of Center's and Rabineau's claims over against Cyanamid for its negligence in the sale of Acrylite for use in the making of architectural paneling. If the plaintiffs had proceeded *only* against Center and Rabineau and recovered judgment against them, it is clear beyond doubt that the latter could thereafter have commenced an action for indemnity against Cyanamid predicated upon Cyanamid's negligence and, in that separate action, Center and Rabineau could have sought an apportionment of responsibility (*Dole* v. *Dow Chem. Co., supra,* pp. 148–149). It would be anomalous to deny Center and Rabineau indemnity because they proceeded by cross claims against Cyanamid instead of by independent actions.

Similarly, Cyanamid argues that the first verdict determined that Center and Rabineau were active tort-feasors and thus had no right to common-law indemnity. Cyanamid maintains that by that verdict it had, in effect, obtained a judgment that it was not negligent and that implicit in the verdict was a factual finding that Acrylite was free of any defect requiring warning to a user. This finding, it asserts, collaterally estops Center and Rabineau in the second stage of the trial from arguing that it was negligent in failing to warn, since warning was not required.

The obvious answer to Cyanamid's initial contention is that a tort-feasor may not be denied indemnity because his negligence was active. *Dole* did not intend, with respect to apportionment among joint or concurrent tort-feasors, to continue alive the active-passive negligence dichotomy (cf. *Rogers* v. *Dorchester Assoc.,* 32 N Y 2d 553, 565–566). The answer to Cyanamid's next contention is that *the issue of its negligence* was not submitted to the jury in the trial's first stage and, hence, the jury's second stage verdict uprooted nothing Cyanamid had gained by the prior verdict. As for Cyanamid's assertion of collateral estoppel, that doctrine may not be asserted against Center and Rabineau because they never had an opportunity, in the trial's first stage, to litigate their negligence claims against Cyanamid

(*Schwartz* v. *Public Administrator of County of Bronx*, 24 N Y 2d 65).

In litigation such as that at bar, in which there was an evidentiary unity of essential factual and legal issues underlying all of the opposing claims, the contentions here raised by Cyanamid could well have been avoided if the trial court had directed a simultaneous trial of all of the issues (see *Dole* v. *Dow Chem. Co., supra,* p. 153). Because multiparty claims must often by their legal nature be determined factually in sequential order, it is desirable that the method chosen for the jury's determination of them provide the broadest opportunity, consistent with fairness, for the production by all parties of all of the evidence relevant to all of the claims in issue. When, as in the case at bar, evidence concerning factual issues common to both causes is split into separate liability stages of a trial, a risk is created (which is exactly what happened here) that in the first stage the jury will not have before it all of the evidence relevant to all of the issues to be determined by it. Hence, in the absence of countervailing considerations, the trial court's discretion in deciding whether multiparty claims of the type at bar are to be tried separately should favor one trial of all issues.

Lastly, Cyanamid argues that it is liable only for 70% of Rabineau's actual payment of $210,086 to the plaintiffs and not for 70% of Rabineau's apportioned liability of $437,325. If Cyanamid's argument succeeds, it will have escaped a substantial percentage of the liability apportioned to it because Center, before the percentages of responsibility were fixed in the trial's second stage, had paid more than the 30% of the plaintiffs' damages later allocated to it. Cyanamid reasons that, as Rabineau's indemnitor, its obligation is measured by Rabineau's actual loss. However, when the remainder of an indemnitee's liability has been paid by another tort-feasor, it would be unjust to confer a benefit upon the indemnitor merely because the payment was not that of the indemnitee. In paying more than its share of its responsibility, as thereafter apportioned by the jury between itself and Rabineau, Center was not acting officiously, since it was liable to the plaintiffs for the whole of their damages (*Kelly* v. *Long Is. Light Co.,* 31 N Y 2d 25, 30). Having paid the portion of Rabineau's share of responsibility in excess of $210,086, Center, as the assignee of Rabineau's rights under his cross claim against Cyanamid, became entitled to payment for that share of Rabineau's liability which the jury had allocated to Cyanamid. In substance, the settlement agreement foresaw the risk of overpayment by Center of its then

undetermined share of the total liability and, by means of the assignment, it was intended that Center be enabled to recover it. Thus, it follows that the excess paid by Center was a bargained-for sum paid on Rabineau's behalf in exchange, in part, for an assignment of his rights against Cyanamid. Hence, it is inconsequential that the moneys came not from the indemnitee's pocket but, by contract with him, from the pocket of another.

The amended judgment should be affirmed insofar as appealed from, with one bill of costs jointly to the respondents appearing separately and filing separate briefs.

HOPKINS, Acting P. J., MARTUSCELLO, CHRIST and BENJAMIN JJ., concur.

Amended judgment of the Supreme Court, Westchester County, entered May 11, 1973, affirmed insofar as appealed from, with one bill of costs jointly to respondents appearing separately and filing separate briefs.